UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO: 3:17-cr-00010-BJD-JRK |
| | ) | |
| SHELBY TRAVIS PHILLIPS, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM

COMES NOW SHELBY T. PHILLIPS and files this his Sentencing
Memorandum and shows this Court the following:

## I. INTRODUCTION

But, surely, if ever a man is to receive credit for the good he has done,

and his immediate misconduct assessed in the context of his overall life

hitherto, it should be at the moment of his sentencing, when his very

life hangs in the balance.  This elementary principle of weighing the

good with the bad, which is basic to all the great religions, moral

philosophies, and systems of justice, was plainly part of what Congress

had in mind when it directed courts to consider as a necessary

sentencing factor, the history and characteristics of the defendant.

*United States v. Adelson*, 441 F. Supp. 2d 506, 513-514 (S.D.N.Y. 2006).

1

Mr. Phillips through this Memorandum, respectfully requests a sentence that is sufficient, but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.S.C. § 3553.

## II. THE OFFENSE OF CONVICTION AND PRESENTENCE REPORT

On January 26, 2017 Mr. Phillips was indicted for one count of conspiracy to manufacture, distribute and possess with intent to distribute anabolic steroids in violation of 21 U.S.C. §§ 846 and 841. Doc # 1. On June 19, 2017 Mr. Phillips appeared before Magistrate Judge Klindt and entered a plea to Count One. As part of the plea, Mr. Phillips forfeited a Brietling watch to the government. Doc # 126, para. 8. Doc # 126, 127. On July 12, 2017 that plea was accepted by this Court. Doc # 128.

The Revised PSI was delivered to defense counsel on November 20, 2017.

### A.    Objections to the Factual Accuracy of the PSI:

Mr. Phillips objects to the factual accuracy of paragraph 42 of the PSI that Gregory Baker sold steroids to professional athletes ranging from body builders who engaged in professional fitness competitions to a professional rugby player. Although Mr. Phillips admits that Gregory Baker sold steroids to body builders, he objects to the characterization of body builders as professional athletes. An athlete is defined as a person who is trained, or skilled in exercise, sport, or games requiring physical strength, agility, or stamina. See Merriam-Webster.com/dictionary/athlete.

2

In bodybuilding, there is no athletic involvement, rather, what is gauged is how a person looks, not what his or her athletic skill might be. Mr. Phillips was not aware that Gregory Baker sold steroids to a professional rugby player.

Mr. Phillips also objects to the factual accuracy of paragraph 62 that Greg Baker paid him approximately $4,000 per month.

**B.     Objections to the Offense Level Computation**

Mr. Phillips objects to paragraph 72 of the PSI which enhances his offense level 2 points for distribution to an athlete. According to U.S.S.G. § 2D1.1(b)(9), if the defendant distributed an anabolic steroid to an athlete, 2 levels are added. The application notes provide that for purposes of (b)(9) an athlete means "an individual who participates in an athletic activity conducted by (A) an intercollegiate athletic association or interscholastic athletic association; (B) a professional athletic association; or (C) an amateur athletic organization." A Westlaw search on November 7, 2017 of "'body builder' AND anabolic AND steroid AND athlete" returned 3 cases, none of which pertain to this issue. A Westlaw search of "bodybuilder AND anabolic AND steroid AND athlete" returned 5 cases, only one of which was a federal criminal case - *United States v. Shortt*, 485 F.3d 243, 244 (4th Cir. 2007), which simply noted that the defendant physician had prescribed steroids to both bodybuilders and athletes.

As noted above, an athlete is defined as a person who is trained, or skilled in exercises, sports, or games requiring physical strength, agility, or stamina. See Merriam-Webster.com/dictionary/athlete. Body building is not an athletic endeavor, rather, what is gauged is how a person looks, not an individual's athletic skill.

As mentioned above, Mr. Phillips had no knowledge that a professional rugby player received steroids from Mr. Gregory Baker.

Therefore, the 2 level enhancement for distribution to an athlete should not apply.

Mr. Phillips objects to paragraph 77 and notes that the Adjusted Offense Level should be 18.

Finally, Mr. Phillips objects to paragraph 81 and notes that the Total Offense Level should be 15.

## III. <u>GOVERNING PRINCIPLES</u>

Sentencing courts are called upon to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553. Therefore, the sentence imposed must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

4

(A) to reflect the seriousness of the offense, to promote respect

for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

and

(D) to provide the defendant with needed educational or

vocational training, medical care, or other correctional

treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the

applicable category of defendant as set forth in the guidelines—

18 U.S.C. § 3553.

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), "the [United States Sentencing] Guidelines are not mandatory, and thus the 'range of choice dictated by the facts of the case' is significantly broadened." *Gall*, 552 U.S. at 59. The factors in 18 U.S.C. § 3553(a) guide sentencing. *See Booker*, at 261. Furthermore, a sentencing court "may not presume that the Guidelines range is reasonable." *Gall*, at 50 (citing *Rita v. United States*, 551 U.S. 338, 351, 127 S. Ct. 2456 (2007)).

The introductory portion of Section 3553(a) directs the sentencing court to "impose a sentence sufficient but not greater than necessary" to comply with the purposes of subsection (2). 18 U.S.C. § 3553(a). Indeed, this provision embodies the overarching goal in federal sentencing. *See Freeman v. United States*, 564 U.S. 522, 529, 131 S. Ct. 2685 (2011). Notably, Section 3553(a)'s sufficient-but-not-greater-than-necessary clause sets an independent and certain limit on the sentence that a court may impose to meet the goals of sentencing. *See, e.g., United States v. Baker*, 655 F.3d 677, 683 n. 1 (7th Cir. 2011) (stating that the sentencing court is to impose "a minimally sufficient sentence"); *United States v. Rodriquez*, 527 F.3d 221, 228 (1st Cir. 2008) (explaining that a district court evaluating a variant sentence request should consider all relevant § 3553(a) factors as a group and strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing").

Of crucial importance, 18 U.S.C. § 3661 makes it clear that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. In addition to the § 3553(a) sentencing factors, the court may receive and consider any information concerning the defendant's background, character, and conduct in imposing a sentence, as the Supreme Court recently highlighted:

6

> In particular, we have emphasized that '[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.

*Pepper v. United States*, 562 U.S. 476, 488, 131 S. Ct. 1229 (2011) (internal citations omitted).

In regard to variances from recommended, advisory ranges under the Guidelines, following the decisions in *Booker*, *Rita*, and *Gall*, the sentencing court:

> [M]ay hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless…

*Rita*, 551 U.S. at 351 (citing Fed.R.Crim.P. 32(f)). An outside the guidelines sentence does not have to be justified by "extraordinary" circumstances, and is not

governed by any "rigid mathematical formula." *See United States v. Irey*, 612 F.3d 1160, 1186 (11th Cir. 2010) (quoting *Gall*, 552 U.S. at 47).

Moreover, Section 3553(a)(3) "directs the judge to consider sentences other than imprisonment." *Gall*, 552 U.S. at 59. The Supreme Court has recognized, regarding the goal of rehabilitation, that "imprisonment is not an appropriate means of pursuing that goal." *Tapia v. United States*, 564 U.S. 319, 328, 131 S. Ct. 2382 (2011) (applying 18 U.S.C. § 3582).

## IV. THE SECTION 3553 FACTORS

### A. Mr. Phillips's History and Characteristics

Shelby is 26 years old and is married to Ashley. He has a 6 year old step-daughter who he treats as if she were his own child. Shelby was raised in Savannah in a large extended family to deeply religious parents. His father, Tony, originally from West Virginia, is a man of limited education who has grown his local contracting business into regional success through the dent of hard work. Shelby's mother, Ann, was the rock of her children's lives. She made certain that her children followed her way into the Catholic school system in Savannah. Shelby has two brothers: Colby, age 31 works for the family contracting business, Colby Enterprises, and Madison, who is 18, and a senior in high school. Photographs of Shelby, his wife and family are attached as Composite Exhibit A.

8

In 2008 Ann Phillips discovered that her husband was being unfaithful. She, Shelby and Madison moved out of the family home into a bare apartment.

Shelby was always small in stature. He followed Colby's footsteps to Benedictine Military School in Savannah where he graduated in 2009. After graduation from Benedictine, Shelby received an academic scholarship to Southern Catholic College outside of Atlanta. Unfortunately, that college closed down after Shelby's first year, and only then did he discover that it was unaccredited.

It was during this time that Shelby began body building in earnest.

Shelby returned to Savannah and enrolled at Armstrong State University. After spending some time in Savannah, Shelby enrolled at the University of North Florida in Jacksonville in 2011. Shelby chose to go to school at UNF so that he could have some sense of independence, but still be close enough to visit his family on the weekends and Holidays.

While in Jacksonville, Shelby received his personal training certification and was working as a personal trainer while going to school. Through mutual friends Shelby got to know Greg Baker, who he thought was a successful personal trainer. Regrettably, Baker introduced Shelby to the dark side of body building - steroids. Looking back, although Shelby admits that he was motivated by greed and his desire to excel in the body building community, he believes that he substituted the steroids body building community for the sense of family missing since his parent's divorce.

9

While this may seem like after the fact rationalization, during his interview with U.S. Probation, Shelby became very emotional, weeping on several occasions when describing his parent's divorce. PSI Revised, para. 91, 103. Notably, during his parent's divorce, Shelby got a tattoo that reads "Vateruncer" – German for Lord's Prayer – to remind him that God was with him even during the dark times of divorce. PSI Revised, para. 17.

Importantly, in August 2015 Shelby left Jacksonville and returned home to Savannah. Shelby left Jacksonville because his wife had reported to Mr. Tony Phillips that her then fiancé was acting erractically and she was concerned about his behavior. Using the ruse that he was under investigation, Mr. Phillips told his son to return home.

Shelby came home, withdrew from all contact with his conspirators and began putting his life back together. It is important to note, this was before the government investigation became overt with a search of Greg Baker's residence in February 2016. PSI Revised, para. 23-25.

Shelby re-enrolled in classes at Armstrong State University in Savannah via mini-mester (October through December 2015), and went to work with the family business and at a nutrition store. Shelby married his fiancé, Ashley, in June of 2016 and starting in the Spring Semester 2016, he began taking a full load of classes at Armstrong. This Semester, Fall 2017, Shelby is taking 4 classes (12 hours):

Intermediate Micro Economics, Money and Banking, Management, and Entrepreneurship. He is on schedule to graduate in 2018. A copy of Shelby's redacted transcript from Armstrong State University is attached as Exhibit B.

In May 2017 Shelby began working at UPS. He received a promotion to Supervisor despite his employer being aware of his guilty plea. His supervisor will appear and testify on his behalf at sentencing.

As the Court can glean from his letters Shelby enjoys the continued support of his family. The letters from Shelby's family, friends, and others are attached as Composite Exhibit C. That support is a valid consideration as this Court looks to sentencing options. *See United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009) (family support one of several valid grounds for downward variance from 41-51 months to probation); *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008). Of course, that is so because experience teaches us that those with a network of love and support will fare better facing the future than those who do not have that support network.

Additionally, a defendant's remorse is a valid consideration for this Court in imposing sentence. *See United States v. Howe*, 543 F.3d 128, 138 (3d Cir. 2008). What rings clear and true in the letters submitted on behalf of Shelby in advance of sentencing is that he is truly remorseful and that remorse is amplified because of his Catholic faith. It is important for Shelby with the support of his family to

11

acknowledge the wrongfulness of his conduct and to accept responsibility for his actions. He has done so.

**B. The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment and Unwarranted Sentencing Disparity**

In looking to the need for the sentence imposed to reflect the seriousness of the offense, this Court can be guided by sentences imposed in similar cases. Thus far, this Court has sentenced the following related cases:

1) Taylor Salvione – plead guilty to one count of conspiracy to manufacture, distribute and possess with intent to distribute controlled substances. PSI Revised, p. 2. She was accountable for 3,900 units of steroids. *Id*. at para. 63. She was sentenced to one year probation. Id. at p. 2.

2) Elijah Adams – plead guilty to conspiracy to manufacture, distribute and possess with intent to distribute controlled substances and conspiracy to commit money laundering. PSI Revised, p. 3. He was accountable for 80,000 units of steroids. *Id*. at para. 60. He was sentenced to 5 years probation. *Id*. at p. 3.

Consistent with the sentences previously imposed, we respectfully request that this Court impose a sentence of home confinement on Shelby with substantial community service. Such a sentence promotes respect for the law by holding Shelby

accountable to this Court during his period of supervised release and requires him to give back to the community through community service.

## C. The Need for the Sentence to Afford Adequate Deterrence

Addressing general deterrence first, the United States Sentencing Commission published a report earlier this year about recidivism ("The Past Predicts the Future"), and the Commission's findings demonstrate that Shelby is unlikely to reoffend. One of the report's findings (page 7, figure 1) is that offenders with zero criminal history points, like Shelby, have the second lowest rate of recidivism.[1]  And, those offenders, like Shelby, who have no prior contact with the criminal justice system have the lowest rate to re-offend of all offenders. *Id*. at p. 9. So, by the commission's own studies, in the world of federal offenders, Shelby **generally** is the least likely to be a reoffend.

As for specific deterrence, any sentence imposed on Shelby fulfills the call to afford adequate deterrence. He is now a convicted felon. Even if he serves some time, he will have to deal with the burden of being a convicted felon for the rest of his life. There can be no reasonable argument that Shelby presents a danger of future

---

[1] This study may be accessed online at the following link:
http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf#page=12

criminal conduct. At his age and station in life, Shelby will never again be at risk to reoffend.

**D. The Need for the Sentence to Provide Educational or Other Benefits**

Shelby is not in need of any educational or vocational training. He is 26 years old and is on course to finish his degree in Business Economics with a Minor in Marketing from Georgia Southern University.

**E. Consideration of the Sentencing Guidelines**

**i.      A Brief History of Steroids and the Sentencing Guidelines**

The first major legislation outlawing steroids in the United States was the Anti-Drug Abuse Act of 1988, which changed the penalty for illegal distribution of steroids from a misdemeanor to a felony. See Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, Steroids Working Group, U.S. Sentencing Comm'n, 2006 Steroids Report, p. 3 (2006).[2] With the enactment of the Anabolic Steroids Control Act of 1990, Pub. L. No. 101-647, 104 Stat 4789, Congress for the first time criminalized the possession of steroids by adding it as a Schedule III controlled substance. *Id.* at 10. Following intensive media scrutiny of several high profile athletes using steroids, in 2004 Congress passed the Anabolic Steroid Control Act

---

[2] This study may be accessed online at the following link:
https://www.ussc.gov/sites/default/files/pdf/research/working-group-reports/drugs/20060323_Steroid_Report.pdf.

14

of 2004, Pub. L. No. 108-358, 118 Stat. 1661 (2004). *Id*. at 17. As noted in the 2006 Report, between 2001 and 2005, there were 46 steroid distribution offenders sentenced and of those, 26 cases had base offense levels of 6, and 26 received a sentence of probation. *Id*. at 28.

Following the passage of the Anabolic Steroid Control Act of 2004, the Sentencing Commission significantly enhanced the sentencing guidelines applicable to steroids.

### ii.     The Sentencing Guidelines in This Case

As noted above, this Court must consult and consider applicable Guidelines provisions and Guidelines Policy Statements, but is now permitted to tailor the sentence in light of other statutory concerns as well. *See Booker*, 543 U.S. at 245. Shelby has a criminal history category I, and an offense level 18 for an advisory guidelines range of 24 to 30 months. *See* PSI Revised para. 91, 84, 118. Counsel has objected to the two-level enhancement found in paragraph 72. PSI Addendum. Pursuant to *Booker* and its line of cases, the Court is fully empowered to disagree with the Guidelines and Guidelines Policy Statements.

This case is Shelby Phillips' first contact with law enforcement. Shelby comes from a close knit, extended family who are grounded in their Christian faith.

He is married and he and his wife have a 6 year old girl.

Shelby has maintained employment throughout his adult life.

15

He currently works a full time job at UPS and takes a full class schedule at Armstrong State University.

Shelby has accepted responsibility and is deeply remorseful for his actions.

A sentence of home confinement will fulfill the mandate of 18 U.S.C. 3553.

Shelby has abided by the conditions of pretrial release. He will abide by the conditions of supervised release and home confinement.

## V. <u>CONCLUSION</u>

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52 (citing *Koon*, 518 U.S. at 113). We have sought to present this Court with a full picture of why a sentence significantly below the guidelines is appropriate for Shelby Phillips. There are intangibles to every soul who comes before this Court for sentencing. We ask that this Court balance justice and mercy in imposing sentence.

We, therefore, respectfully request that this Court "impose a sentence sufficient, but not greater than necessary" when sentencing Mr. Phillips.

This the 21st of November, 2017.

GILLEN, WITHERS & LAKE, LLC

*s/ Thomas A. Withers*
Thomas A. Withers, Esq.
Georgia Bar Number: 772250

8 East Liberty Street
Savannah, Georgia 31401
Phone: (912) 447-8400
Fax: (912) 629-6347
Email: Twithers@gwllawfirm.com

LAW OFFICE OF D. GRAY THOMAS, P.A.

*s/ D. Gray Thomas*
D. Gray Thomas
Florida Bar No: 956041

865 May Street
Jacksonville, FL 32204
Phone: (904) 634-0696
Fax: (904) 503-0441
Email: dgraythomas.law@gmail.com

Attorneys for Defendant Shelby T. Phillips

# **CERTIFICATE OF SERVICE**

The undersigned certifies that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

This the 21st day of November, 2017.

*s/ Thomas A. Withers, Esq.*
Thomas A. Withers, Esq.

Gillen, Withers & Lake, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone:   (912) 447-8400
E-Mail: Twithers@gwllawfirm.com

Georgia Bar Number: 772250
Attorney for Shelby T. Phillips

18